**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| | ) | CASE NO. 15-21416 (AMN) |
| THORNTON & CO., INC., | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| BONNIE C. MANGAN, Chapter 7 Trustee for THORNTON & CO., INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 18-02077 |
| | ) | |
| JOHN PAUL THORNTON, JR. and NANCY HARDY, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| BONNIE C. MANGAN, Chapter 7 Trustee for THORNTON & CO., INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 18-02078 |
| | ) | |
| JOHN PAUL THORNTON, JR., JOHN PAUL THORNTON, III and MATTHEW S. THORNTON, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

TO:    THE HONORABLE ANN M. NEVINS
          UNITED STATES BANKRUPTCY JUDGE

Bonnie C. Mangan, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Thornton & Co., Inc. (the "Estate"), by and through her undersigned counsel, hereby respectfully submits this motion (the "Motion") for an order, pursuant to Federal Rule of Bankruptcy Procedure 9019(a), approving the proposed settlement between the Trustee and the following defendants: John Paul Thornton, Jr. ("Paul Thornton"); Nancy Hardy ("Hardy"); and Matthew Thornton ("Matt Thornton") (collectively referred to herein as the "Settling Defendants").  In support thereof, the Trustee represents as follows:

## BACKGROUND

1.    On August 10, 2015 (the "Petition Date"), Debtor Thornton & Co., Inc. filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code.

2.    On December 10, 2015, the Court converted the Debtor's bankruptcy case to a case under Chapter 7 of the United States Bankruptcy Code and appointed Bonnie C. Mangan as Chapter 7 Trustee for Thornton & Co., Inc.

3.    The Trustee has investigated and pursued certain avoidable transfers of the Debtor's property, including those transfers that could be avoided as preferential and/or fraudulent transfers.

4.    Based upon the Debtor's financial books and records, including bank statements, the Trustee has determined that during the four (4) years preceding the Petition Date, the Debtor made numerous transfers to persons and/or entities that did not benefit the Debtor.

5.    On or around August 31, 2018, the Trustee commenced an adversary proceeding against Paul Thornton and Hardy (the "Paul/Hardy Action") alleging that Paul Thornton, *inter alia*: (1) caused the Debtor to pay Paul Thornton & Hardy's personal credit card accounts and personal expenses; (2) caused the Debtor to place Hardy on the Debtor's payroll, pay her wages,

2

and pay for her health insurance when she was not an employee of the Debtor; (3) owed certain sums to the Debtor, which amounts were recorded in the Debtor's books and records as shareholder loans or note receivables due from Paul Thornton; and (4) retained, for his own benefit, overpayments made by the Debtor in connection with its payment of his estimated income taxes.

6.      On or around August 31, 2018, the Trustee commenced an adversary proceeding against Paul Thornton, Matthew Thornton, and John Paul Thornton, III ("Jake Thornton") (the "Thorntons Action") alleging that Paul Thornton and Jake Thornton, *inter alia*: (1) incurred personal expenses on the Debtor's business credit card and caused the Debtor to pay those expenses; and (2) caused the Debtor to transfer funds for the purchase of a vacation home by Jake Thornton, Matthew Thornton, and/or Paul Thornton, and then further caused the Debtor to transfer funds to pay for home improvement work that was performed on the aforesaid vacation home (the "Parson Road Transfers").

7.      In response to the Trustee's claims, the Settling Defendants have asserted several defenses, including claims that: (1) the Debtor was not insolvent at the time that many of the alleged transfers occurred, it being particularly disputed whether the Debtor was insolvent in or before September 2014, when the bulk of the Parson's Road Transfers occurred; (2) that many of the transfers that the Trustee seeks to avoid were allegedly legitimate business related expenses, or were contemporary exchanges for value; (3) that Paul Thornton allegedly reimbursed the Debtor for personal expenses that the Debtor paid on his behalf through a regular practice of "truing up" personal expenses made on the business credit card and then issuing checks from Paul Thornton's personal account to the Debtor's business account; and (4) after many of the transfers occurred, Paul Thornton contributed in excess of $300,000.00 to the Debtor and

personally guaranteed the Debtor's obligations to Peoples United Bank, N.A. ("People's Bank"), which Paul Thornton claims would offset many of the Trustee's claims.

8.      Additionally, the Trustee has serious concerns about the Settling Defendant's ability to pay any judgment(s) awarded in these adversary proceedings, the cost to the Estate of collection efforts thereon, and the possibility of a bankruptcy filing by one or more of the Settling Defendants.  In addition to the Trustee's claims, Paul Thornton owes substantial amounts to both Chevron Phillips and People's Bank, the later of which has liens on the majority of Paul Thornton's non-exempt assets.  These collectability concerns have driven settlement discussions throughout the pendency of these actions and have been supported by sworn financial affidavits from Paul Thornton and Hardy.

9.      In order to avoid unnecessary time and expense and the uncertainty of collectability, the parties have decided to settle this dispute.

## SUMMARY OF SETTLEMENT TERMS

10.      Pursuant to the settlement contemplated herein, the Paul Thornton, on behalf of all the Settling Defendants, shall pay the Trustee the sum of One Hundred Twelve Thousand Five Hundred (**$112,500.00**) Dollars in full and final satisfaction for any and all claims that the Trustee, on behalf of the Estate, had, has or may have against any of the Settling Defendants. The Trustee will be holding the settlement funds in escrow prior to the hearing on this motion, pending this Court's approval of the settlement.

11.      Pursuant to the settlement contemplated herein: (1) each of the Settling Defendants release the Estate from any and all claims that such Settling Defendant may have against the Estate, including, but not limited to, any claim under Section 502(h) of the Code; and

(2) the Trustee releases any claim that the Trustee, on behalf of the Estate, had, has or may have against any of the Settling Defendants.

12.     Upon this Court's approval of the settlement, any judgments that the Trustee has against Paul Thornton shall be deemed satisfied as to Paul Thornton only and any liens or similar rights that the Trustee may have against Paul Thornton's property, if any, shall be released.  To the extent that any party, other than a Settling Defendant, is also an obligor on any judgment against Paul Thornton, the obligation of such third party shall not be affected hereby.  In addition, the Paul/Hardy Action shall be dismissed with prejudice and without costs and Paul Thornton and Matthew Thornton shall be dismissed from the Thorntons Action with prejudice and without costs.

13.     Additionally, the Trustee and each of the Settling Defendants have agreed that, upon this Court's approval of the settlement and at no cost to themselves, they shall reasonably cooperate with each other in the execution of any documents necessary to effectuate the terms of the settlement contemplated herein.

## STANDARDS FOR SETTLEMENTS PURSUANT TO FED. R. BANKR. P. 9019(a)

14.     Fed. R. Bankr. P. 9019(a) provides that "on motion by the trustee and after notice and a hearing, the bankruptcy court may approve a compromise or settlement."  The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical matter, it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts."  In re Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25, 88 S. Ct. 1157, 1163, 20 L. Ed. 2d 1, 9-10 (1968).  The settlement of time-consuming and burdensome litigation, especially in the

bankruptcy context, is encouraged.  In re: Penn Central Transportation Co., 596 F.2d 1002 (3d

Cir. 1979).

15.    Approval of a proposed settlement is within the "sound discretion" of the

bankruptcy court.  In re Neshaminy Office Buildings Associates, 62 B.R. 798, 803 (E.D. Pa.

1986).  The court must determine whether the proposed settlement is in the "best interests of the

estate."  See In the Matter of Energy Cooperative, Inc., 886 F.2d 921, 927 (7th Cir. 1989).  In

determining whether to approve a compromise, the bankruptcy court should apprise itself "of all

facts necessary for an intelligent and objective opinion of the probabilities of ultimate success

should the claim be litigated.  Further, the judge should form an educated estimate of the

complexity, expense, and likely duration of such litigation, the possible difficulties of collecting

on any judgment which might be obtained, and all other factors relevant to a full and fair

assessment of the wisdom of the proposed compromise.  Basic to this process, in every instance,

of course, is the need to compare the terms of the compromise with the likely rewards of

litigation."  TMT Trailer Ferry, Inc., 390 U.S. at 424-25.

16.    The bankruptcy court should consider five factors in striking the balance between

the value of the compromise and the value of the claim:  1) the probability of success in the

litigation; 2) the likely difficulties in collection; 3) the complexity of the litigation; 4) the

expense, inconvenience and delay necessarily attending it; and, 5) the paramount interest of the

creditors.  In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 292 (2d Cir. 1992), cert.

dismissed, 506 U.S. 1088, 113 S. Ct. 1070, 122 L. Ed. 2d 497 (1993).  The court should not

substitute its judgment for that of a trustee.  Neshaminy Office Building Associates, 62 B.R. at

803.  The court is not to decide the numerous questions of law or fact raised by litigation, but

rather should canvas the issues to see whether the settlement falls below the lowest point in the

6

range of reasonableness.  In re W.T. Grant and Co. 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983).  In addition, "because the bankruptcy judge is unequally situated to consider the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion." Neshaminy Office Building Associates, 62 B.R. at 803 (citing, In re Patel, 43 B.R. 500, 505 (N.D. Ill. 1984).

17.     In the Trustee's judgment, this settlement is in the best interests of the Estate and permits the Estate to avoid the risks and expenses associated with litigation and post-judgment collection efforts.  In light of the costs associated with prosecuting this action to conclusion, including forensic accountant's fees associated with proving the Debtor's insolvency at the time of each of the alleged transfers, the Trustee believes that it would best serve the interests of the Estate to settle all claims between the Estate and the Settling Defendant.  Although the claims alleged by the Trustee are significant in size, there is significant uncertainty as to the Trustee's ability to avoid many of alleged transfers.  In fact, the vast majority of the alleged transfers occurred prior to the date that the Debtor is believed to have become insolvent.  While this may be an issue at trial, the Estate would need to incur substantial expense, in the form of forensic accountant fees, in order to prove that the Debtor was insolvent particular dates before this one year period.  Given the collectability concerns mentioned above, the Estate many not be able to recoup such costs, even if it succeeds at trial.

18.     Moreover, due to the comingled nature of the personal and business expenses involved, it is reasonable to expect that only a portion of the transfers alleged by the Trustee will be avoidable.  Even then, the Trustee has confirmed that Paul Thornton did reimburse some personal expenses, although these reimbursements were not clearly allocated between various personal expenses and do not appear to account for all of the personal expenses alleged.  Trial of

7

this matter would be a long and arduous process, as there would need to be an individual factual analysis concerning the nature of hundreds of transfers and whether each such transfer was made in exchange for reasonably equivalent value.  Given the nature of the Debtor's business, it is reasonable to expect that Paul Thornton will be able to show that some of these personal expenses actually had a legitimate business purpose and provided reasonably equivalent value to the Debtor.

19.     Accordingly, the Trustee has agreed to accept, by way of settlement, the sum of One Hundred Twelve Thousand Five Hundred ($112,500.00), which the Trustee believes is likely greater than the net recovery the Estate could otherwise obtain through collection efforts against Mr. Thornton's non-exempt, unencumbered assets.[1]

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the annexed Order to approve the proposed settlement pursuant to Fed. R. Bankr. P. 9019(a) and grant such other and further relief as the Court shall deem just and proper.

Dated at Milford, Connecticut, this 27th day of April, 2020.

> THE TRUSTEE,
> BONNIE C. MANGAN,
>
> By:/s/ David C. Shufrin_____
>      David C. Shufrin [ct29230]
>      HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC
>      147 North Broad Street
>      Milford, CT 06460
>      Tel: 203-877-8000/Fax: 203-878-9900
>      DShufrin@hssklaw.com

---

[1] Based on information made available to the Trustee under a confidentiality and nondisclosure agreement, the Trustee expects that Paul Thornton will be required to utilize assets that are otherwise exempt from judgment in order to make the payment contemplated by the settlement described herein.